UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> KERMIT DARYL TANNER, <br> Defendant. | Case Nos. 17-cr-00347-VC-1 <br><br> **ORDER RE ELIGIBILITY FOR** <br> **SAFETY VALVE RELIEF** |
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> KERMIT DARYL TANNER, <br> Defendant. | Case Nos. 17-cr-00383-VC-1 |

Kermit Tanner pled guilty to five firearms counts and two drug counts. The firearms counts stem from the sale of guns to a confidential informant on several occasions in January 2016. Eleven months later, in December 2016, Tanner reconnected with the confidential informant and sold him cocaine base, leading to the drug counts. One question presented at Tanner's sentencing hearing was whether he was eligible for safety valve relief, such that he would not be subject to the mandatory minimum 60-month sentence that would otherwise have attached to his drug convictions. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a) (commonly referred to as the "safety valve"). At the sentencing hearing, the Court decided that Tanner was in fact safety valve eligible. This opinion further explains that decision.

The safety valve allows drug offenders to escape mandatory minimum sentences if they

satisfy five criteria. The only criterion in dispute here was whether Tanner "possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). The government argued at the sentencing hearing that when Tanner sold firearms in January 2016, he possessed those guns "in connection with" his December 2016 drug offenses.

The phrase "in connection with" is not defined in the statute or correlating sentencing guideline. Typically, courts conduct fact-bound and contextual inquiries, focusing on details like "the circumstances in which the firearms were found," the "implausibility of the defendants' explanations" for how the guns were unconnected to the drugs, or the types or quantity of weapons possessed. *United States v. Ferryman*, 444 F.3d 1183, 1186 (9th Cir. 2006); *see United States v. Fernandez*, 526 F.3d 1247, 1252 (9th Cir. 2008). Courts have described "in connection with," for purposes of safety valve eligibility, as involving a "close connection linking the individual defendant, the weapon and the offense." *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187 (10th Cir. 2004). A defendant may "possess[] a firearm in connection with a drug offense if the firearm is in proximity to drugs or if the firearm facilitates the drug offense, whether by emboldening an actor who had the ability to display or discharge the weapon, by serving as an integral part of a drug transaction as in a barter situation, by instilling confidence in others who relied on the defendant, or serving as a 'badge of office' to help the defendant avoid detection." *United States v. Carillo-Ayala*, 713 F.3d 82, 93 (11th Cir. 2013) (citations omitted).

Courts often compare the safety valve provision to U.S.S.G. § 2D1.1(b)(1), which authorizes a two-level enhancement to a defendant's offense level if "a dangerous weapon (including a firearm) was possessed." Although they share somewhat similar language, sections 2D1.1(b)(1) and 5C1.2(a)(2) have different burdens of proof. To avoid the enhancement under section 2D1.1(b)(1), the defendant must prove it is "clearly improbable" he possessed a firearm in connection with the offense. *See id.*, cmt. 11(A) ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). But with respect to the safety valve, the defendant need only show by a

preponderance of the evidence that he did not possess a firearm in connection with the offense. *See Ferryman*, 444 F.3d at 1186; *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000). Therefore, the standard for thwarting the weapon-possession enhancement is generally higher for a criminal defendant – it is possible to possess a firearm for purposes of the enhancement under U.S.S.G. § 2D1.1(b)(1) but not "in connection with" a drug offense for purposes of safety valve relief. *See Nelson*, 222 F.3d at 551; *Zavalza-Rodriguez*, 379 F.3d at 1188 ("The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2."); *see, e.g.*, *United States v. Mendez-Velarde*, 798 F. Supp. 2d 1249, 1256 (D.N.M. 2011).[1]

Against this legal backdrop, the government was clearly wrong to argue that Tanner's January 2016 gun crimes were "in connection with" his December 2016 drug crimes merely because he sold the drugs to the same person who previously bought the guns from him. To be sure, the government need not have demonstrated that the defendant physically possessed the gun at the precise time he executed the drug transaction. *See Fernandez*, 526 F.3d at 1250. But the amount of time that separated Tanner's firearm and drug offenses made it virtually impossible to conclude that the former was "in connection with" the latter. Perhaps there could be some highly unusual circumstance where the possession of a firearm 11 months earlier could facilitate the sale of drugs 11 months later, but no such circumstance is present here. Indeed, neither the probation officer nor the government proposed to apply the two-level enhancement for possession of a firearm during the course of committing a drug-related crime under U.S.S.G. § 2D1.1(b)(1), which itself belied the government's assertion that the safety valve criterion was

---

[1] It bears noting that in *Fernandez*, a Ninth Circuit panel mis-cited *Ferryman* and *Nelson* for the defendant's burden to prove safety valve relief. *See* 526 F.3d at 1252. Although *Ferryman* and *Nelson* clearly delineate a difference between the "clearly improbable" standard under U.S.S.G. § 2D1.1(b)(1) and the preponderance of the evidence standard under U.S.S.G. § 5C1.2(a)(2), *Fernandez* states that for safety valve relief "[t]he burden is on the defendant to prove that it was 'clearly improbable' that he possessed a firearm in connection with the offense." 526 F.3d at 1252 (quoting *Ferryman*, 444 F.3d at 1186). This error has not been replicated in subsequent Ninth Circuit cases. *See, e.g.*, *United States v. Washington*, 580 F. App'x 578, 578 (9th Cir. 2014); *United States v. Suastegui*, 513 F. App'x 637, 638 (9th Cir. 2013); *United States v. Mah*, 439 F. App'x 653, 653 (9th Cir. 2011); *United States v. Tarrer*, 363 F. App'x 479, 480-81 (9th Cir. 2010). Therefore, the error is best understood as harmless dicta.

not satisfied.[2]

To get around this, the government argued for application of another standard altogether, namely, a "common scheme or plan" standard akin to the one applied to join the offenses for trial under Rule 8(a) of the Federal Rules of Criminal Procedure. Under that standard, Tanner's guns and drugs convictions could be considered parts of a common scheme or plan, and thus Tanner would be ineligible for safety valve relief. The government's argument, however, didn't make sense in light of the distinction courts draw between possession of a firearm under U.S.S.G. § 2D1.1(b)(1), and possession "in connection with the offense," under U.S.S.G. § 5C1.2. In fact, the government's position would flip the dynamic between the two provisions: It would be more difficult for a criminal defendant to demonstrate safety valve eligibility than to defeat a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1).

For all these reasons, Tanner's gun offenses were not "in connection with" his drug offenses so as to deny him safety valve eligibility.

**IT IS SO ORDERED.**

Dated: July 26, 2019

_____

VINCE CHHABRIA
United States District Judge

---

[2] For that matter, even if the more demanding standard under U.S.S.G. § 2D1.1(b)(1) had applied, Tanner would have prevailed.